## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. CR-19-00956-SMB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 18, 2020 |
| Miles Spencer Coyote, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE SUSAN M. BRNOVICH, JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**SENTENCING**</u>

**APPEARANCES:**

For the Plaintiff:
   U.S. ATTORNEY'S OFFICE
   By:  **Ms. Christina J. Reid-Moore, Esq.**
   2 Renaissance Square
   40 North Central Avenue, Suite 1800
   Phoenix, AZ 85004

For the Defendant:
   FEDERAL PUBLIC DEFENDERS OFFICE
   By:  **Mr. Gregory A. Bartolomei, Esq.**
   850 West Adams Street, Suite 201
   Phoenix, AZ 85007

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

# P R O C E E D I N G S

COURTROOM DEPUTY: On the record in CR 19-956, United States of America versus Miles Spencer Coyote, before the Court for sentencing.

MS. REID-MOORE: Good afternoon, Your Honor. Christina Reid-Moore on behalf of the government.

MR. BARTOLOMEI: Good afternoon, Your Honor. Gregory Bartolomei appearing on behalf and with Miles Spencer Coyote, appearing from CoreCivic by video, a circumstance which he consents to in order to proceed today.

THE COURT: Thank you.

Sir, would you state your full name and date of birth.

THE DEFENDANT: Miles Spencer Coyote, April 15th, 1994.

THE COURT: All right. We are set for sentencing.

You pled guilty before a magistrate judge and that plea was accepted.

Therefore, it is now the judgment of the Court that you are guilty of the crime of Transfer of Obscene Material to a Minor, in violation of Title 18, United States Code, Section 1470. That's a class C felony.

I have read and considered the written presentence report.

Have both counsel reviewed the presentence report?

MS. REID-MOORE: I have, Your Honor.

1          MR. BARTOLOMEI:  Yes, Your Honor.

2          THE COURT:  And, Mr. Coyote, did your attorney go over

3     the presentence report with you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And did he give you an opportunity to ask

6     questions if you had any?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you feel like you understand the

9     report?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  All right.  And, for the record, there

12    were some objections -- or I think one objection to the

13    presentence report, which I understand is resolved, correct?

14         MR. BARTOLOMEI:  Yes, Your Honor.

15         THE COURT:  Okay.  So the Court accepts the plea

16    agreement and the judgment and sentence will be consist with

17    it.

18         I am satisfied the plea agreement adequately reflects

19    the seriousness of the actual offense behavior, and that

20    accepting the agreement will not undermine the statutory

21    purposes of sentencing or the sentencing guidelines.

22         Sir, in your case, the guidelines were calculated as

23    follows:

24         The Court finds the applicable offense level is 14.

25    Your Criminal History Category is I.

1        So the ranges for sentence are as follows:

2        15 to 21 months incarceration; 1 to 3 years of

3    supervised release; a fine between $7,500 and $75,000.

4    Probation is not available.  And there is a mandatory $100

5    special assessment.

6        Are there any objections to the guideline

7    calculations?

8        MS. REID-MOORE:  No, Your Honor.

9        MR. BARTOLOMEI:  No, Your Honor.

10        THE COURT:  All right.  In addition to the presentence

11    report, I have read the letter from Reverend Ray Stillings, the

12    letter from Adriana De La Cruz (phonetic), and five

13    certificates of completion from CoreCivic, the defendant's

14    sentencing memoranda, and the government's sentencing

15    memoranda.

16        Counsel, anything you would like to say now on behalf

17    of your client?

18        MR. BARTOLOMEI:  Yes, Your Honor.

19        We, of course, rely upon the sentencing memorandum

20    completely.  We don't want this Court to give up on Mr. Coyote.

21    I don't know what more he could have done during the time he's

22    been at CoreCivic in order to show the Court the extent of his

23    remorse.  He has been forthright in addressing issues with the

24    counselors there and dealing with the programs he's been going

25    through.  They are limited, unfortunately, but he's taken

1   whatever he could to show that he's serious about wanting to
2   change his lifestyle.
3           He understands that at his age he can't be playing
4   those kinds of games.  And social media can be very tempting
5   and fool -- and a lot of foolishness goes on, but he's beyond
6   that.  He's a father.  He's got responsibilities, and that's
7   been made very clear to him, and I think he gets it, because
8   he's had a lot of time sitting in CoreCivic in a very
9   segregated wing having to think about his personal
10  circumstances.
11          And he understands he has responsibilities to that
12  child.  He also has responsibilities to the mother who is ill.
13  She has a tumor.  And he must meet those responsibilities.
14  He's got no choice.  He brought that child into the world.
15  He's got a responsibility to take care of the child.
16          Judge, another factor that isn't always considered or
17  given as much weight as it should be, in my opinion, is the
18  fact that he's wearing the yellow outfit there.  He's in a
19  segregated wing of CoreCivic.  That's for his own safety.  And
20  he has to live, and has been living every day, with fear,
21  because he's kept away from the rest of the population because
22  of the nature of the charges.  And that kind of highlights the
23  seriousness of what you've done and how you need to change.
24  That's an educational factor.  It's a point that's been brought
25  home to him.

He doesn't want to be there anymore.  He doesn't want
to be in these circumstances.  He wants to move on.  So that's
why we're saying, Your Honor, we don't want you to lose hope.

He understands he's got an alcohol problem.  And we
think the Court can fashion its sentence that will enable a
probation officer to work with him in order to put him and keep
him on the right path.  And the foolishness that goes on on the
rez, you know, the playing tag with the police, that's over.
He's too old.  It's foolish to begin with.  He can't do it
anymore.  He needs structure.  And we think that the guidance
that a probation officer can provide is exactly the kind of
structure he needs.

So we're asking the Court to impose the minimal
sentence that Your Honor thinks is appropriate under the
3553(a) factors, taking into account the seriousness and
documented history of alcohol substance abuse, which he has.
And I think he will be productive and we don't want you to give
up hope.

THE COURT:  Okay.  Thank you.

And I wanted to clarify something.  I had a question
mark, because his conviction in state court was after this, the
time period of these, at least from what I understand.  The
Facebook communications were from sometime in February to late
March of 2019 after he had been arrested for the attempted
unlawful flight and possession of marijuana for sale, but

1  before he was sentenced in that case.

2            Was he on release?  Does anybody know?

3            MR. BARTOLOMEI:  I honestly don't know, Judge.

4            MS. REID-MOORE:  I don't know the answer to that

5  question, Your Honor.  I'm sorry.

6            THE COURT:  It's just a very short time frame, so I

7  suppose it's possible he wasn't, but I just -- I was just

8  wondering.

9            Because initially I had thought he was on probation,

10 but then I went back and looked and he was not sentenced at the

11 time frame of this offense, so.  Okay.

12           Well, Mr. Coyote, anything you'd like to say before I

13 sentence you?

14           THE DEFENDANT:  Yes.  I understand that I made a

15 mistake.  And, like my attorney says, I do apologize and I have

16 remorse for my actions to the -- not only who I am, but I am a

17 father.  And I'm a good father.  I take care of her.  And I can

18 do probation.  I can complete it.

19           I'm already on probation with the state.  And I have

20 gone through these allegations before I was sentenced by the

21 state.  And I kept going to court, and that was the only way

22 the federal government would file a warrant.  And I showed and

23 I took responsibility and now I'm here.  And every day I've

24 been in paying with my time, taking of my own actions.

25           And I most likely hurt my own family, my daughter,

1    and, of course, the victim that I should have never contacted

2    or been in contact with.  And it was a mistake that I made.

3            And as far as the alcohol, I have been sober from

4    alcohol for five years.  And I had just relapsed last year in

5    April and it went down from there.

6            And the psycho evaluation was a strange thing to go

7    through, because they filled up my head with images and tell me

8    how to think about it, and I did the best that I could.

9            And as far as me being in denial, I understand that

10   what I go through is serious, and to other people it's a

11   stronger impression.  And I'm willing to grow up and stop --

12   stop doing what I'm doing, because I was 24 years old when I

13   committed the offense in February, almost two years ago.  And

14   now I'm 26.  And I'm ready to go home to be a father, with the

15   Court's blessing.  And each packet that it's worth, including

16   my next couple of years, I'm still going to change.  And I'm

17   going to be there for what I need to be there for.

18           But I do apologize to the government and the victim

19   and my own family.  And that's all.

20           THE COURT:  Okay.  Thank you.

21           Ms. Reid-Moore.

22           MS. REID-MOORE:  Well, Your Honor, I don't want to

23   repeat myself, so I'll just incorporate all of the information

24   that I provided during the sealed portion of today's

25   proceedings.

1          The sentence that we're recommending of 60 months is a

2    just sentence under all the factors that I've talked about.

3          Also, with respect to deterrence, as the Court knows,

4    we're not just trying to deter him from putting the public at

5    risk, which he clearly is a risk to the public, based on that

6    very extensive psychosexual evaluation, but the sentence in

7    this case will hopefully also deter the general public from

8    doing these types of things.

9          The Court does not have available to it, because there

10   were so many, all of the communications between Facebook --

11   between the victim and him and Facebook, and there were many,

12   and they were just as vulgar as the ones that you've seen.

13   There were just so many things that were going on there.

14         She's 14.  She might have said in her forensic

15   interview that this was stupid, but as is common in sex-type

16   cases, or sex abuse cases, victims either disclose, or they do

17   not disclose ever, or they delay disclosure, for a number of

18   their own reasons that they're going through.  So we don't know

19   what the impact is on this victim in the case, but we want the

20   Court to recognize that she is a victim, and that needs to be

21   remembered here.

22         So a sentence of 60 months will provide just

23   punishment to this defendant.  Hopefully he will take his

24   alcohol abuse issues seriously, because until today he hasn't

25   really made statements that have supported that he believes he

even has a problem.  And if he doesn't tackle that problem,

he'll be before you again for supervised release violations.

        And then, finally, with respect to his supervised

release, we are hopeful that they'll be some counseling and

treatment that he will take seriously, not just alcohol

treatment, but also psychosexual evaluations that show that he

needs sex-offender type treatment so that he doesn't re-offend.

That's really important.  But he has to accept what he's done

and take it seriously.

        So for all the reasons set forth in my motion for a

variance, all the reasons that I stated during the sealed

portion of the proceedings today, and what I've just stated

now, Your Honor, we are seeking 60 months, followed by three

years of supervised release.

        Thank you.

        THE COURT:  Okay.

        PROBATION OFFICER:  Your Honor, this is Tey'a Warner

with probation.

        THE COURT:  Yes.

        PROBATION OFFICER:  May I add something really

quickly?  I'm sorry.

        THE COURT:  Sure.

        PROBATION OFFICER:  I did not prepare this report, but

as I'm looking through the report, I am noticing that it

appears that his plan to release is to a home that has minor

children.  And we are asking that he not have contact with

minor children.

So unless there is another plan in place for the

defendant, I would like to suggest that we add a reentry center

condition, special condition, so that he has housing upon his

release.

THE COURT:  Well, actually, there was an objection to

the term that he not have contact with any minor children.

That objection was resolved prior to today, and the new

recommendation excludes his own children and children with whom

you have a familial relationship, without prior written

authorization by the probation officer.

PROBATION OFFICER:  Okay.  I apologize.

THE COURT:  That's okay.

I guess if the housing situation changes before he's

released, the probation office will have to come back and ask

for that term if there is no place for him to go, but I think

it's anticipated that he will be able to go to his home.

All right.  In addition to what I already stated, I

want to include in that calculation the harm to the victim.  I

don't think I talked about that.  Obviously, this is a 14-year-

old girl who, you know, once that stuff gets out there that was

solicited by the defendant, it's hard to get rid of, so there

is potential harm in that, and just potential harm, that I

anticipate, as she gets older, will become more vivid in her

self-awareness or self-respect and may give her problems with

future relationships.  But, at a minimum, it gives her pause to

trust adults.

　　　　And, Mr. Coyote, to be clear, I'm not giving up hope

on you, that's not really what I do, but I do think it's

important to send a strong message to you about how serious

this is, and the guidelines recommendation does not reflect the

seriousness of this offense and the state that you're in right

now and when this offense was committed.

　　　　I think that, while on supervised release, they can

help minimize that risk, assuming that you mean what you say

and that you want to get better, but it does -- well, there is

just no basis for any leniency in this case.  And had someone

who had contact with you earlier imposed some -- or offered you

some help at some point, then maybe we wouldn't be here.

　　　　So, pursuant to the Sentencing Reform Act of 1984, it

is the judgment of the Court that Miles Spencer Coyote is

hereby committed to the Bureau of Prisons for 42 months.

　　　　Defendant shall pay a special assessment of $100,

which shall be due immediately.

　　　　The Court finds defendant does not have the ability to

pay and orders the fine waived.

　　　　Defendant shall pay a total of $100 in criminal

monetary penalties.  While incarcerated, payment of the

criminal monetary penalty is due at a rate of not less than $25

1  per quarter, and payments shall be made through the Bureau of

2  Prisons Inmate Financial Responsibility Program.

3          The Court hereby waives the imposition of interest and

4  penalties on any unpaid balance.

5          Upon release from imprisonment, you will be placed on

6  supervised release for a period of 36 months.

7          While on supervised release, you must comply with the

8  mandatory and standard conditions of supervision as adopted by

9  this Court in General Order 17-18.

10          Within 72 hours of your release from custody of the

11  Bureau of Prisons, you must report in person to the probation

12  office in the district to which you are released.

13          And you must comply with the following special

14  conditions:

15          You must cooperate in the collection of DNA as

16  directed by the probation officer.

17          You must attend and participate in a sex offender

18  treatment program and sex-offense specific evaluations as

19  approved by the probation officer.

20          You must abide by the policies and procedures of all

21  the treatment and evaluation providers.

22          You must contribute to the cost of such treatment and

23  assessment in an amount not to exceed an amount determined to

24  be reasonable by the probation officer based on ability to pay.

25          To you must attend and participate in periodic

1   polygraph examinations as a means to determine compliance with

2   conditions of supervision and their requirements of your

3   therapeutic program, as directed by the probation officer.

4          No violation proceeding will arise solely as a result

5   of a polygraph test.  A valid Fifth Amendment refusal to answer

6   a question during a polygraph examination will not be used as a

7   basis for a violation proceeding.

8          You must contribute to the cost of such polygraph

9   examination not to exceed an amount determined to be reasonable

10  by the probation officer based on ability to pay.

11         You must register as a sex offender in compliance with

12  all federal, state, tribal, or other local laws, or as ordered

13  by the court.  Failure to comply with registration laws may

14  result in new criminal charges.

15         You must not directly or indirectly contact any victim

16  or the victim's family of the instant offense without prior

17  written permission.  This also includes victims disclosed in

18  treatment, assessment, and/or any other victim identified by

19  the probation officer.

20         Indirect contact includes, but is not limited to,

21  letters, communication devices, audio or visual devices,

22  communication through a third party, and/or your presence at

23  any location the victim may be known to frequent.  You must

24  immediately report any contact to the probation officer.

25         You must not be in the company of or have contact with

children who you know are under the age of 18, excluding your

own children and children with whom you have a familial

relationship, without prior written authorization by the

probation officer.

Contact includes, but is not limited to, letters,

communication devices, audio or visual devices, visits, or

communication through a third party.

You must not utilize by any means any social

networking forums offering an interactive user submitted

network of friends, personal profiles, blogs, chat rooms, or

other environment which allow for interaction with others,

without prior written permission from the probation officer.

You must consent, at the direction of the probation

officer, to having installed on your computer, as defined in

Title 18, United States Code, Section 1030(e)(1), including

internet capable devices, and, at your own expense, any

hardware or software systems to monitor your computer usage.

You must submit your computers or other electronic

communications or data storage devices or media to a search.

You must warn other people who use these computers or devices

capable of accessing the internet that the devices may be

subject to search pursuant to this condition.  Failure to

submit to a search may be grounds for revocation of release.

A probation officer may conduct a search pursuant to

this condition only when reasonable suspicion exists that there

1   is a violation of a condition of supervision, and that the

2   computer or device contains evidence of this violation.

3            You must consent to and cooperate with the seizure and

4   removal of any hardware and/or data storage media for further

5   analysis by law enforcement or the probation officer with

6   reasonable suspicion concerning a violation of a condition of

7   supervision or unlawful conduct.  Any search will be conducted

8   at a reasonable time and in a reasonable manner.

9            You must submit your person, property, house,

10  residence, vehicle, papers, or office to a search conducted by

11  a probation officer.  Failure to submit to a search may be

12  grounds for revocation of release.

13           You must warn any other occupants that the premises

14  may be subject to search pursuant to this condition.

15           You must participate in a mental health assessment and

16  participate in mental health treatment as determined to be

17  necessary by a medical or mental health professional, and

18  follow any treatment directions by a treatment provider.

19           You must take medicine as prescribed by a medical

20  professional providing mental health treatment unless you

21  object, in which event, you must immediately notify the

22  probation officer.  You must contribute to the cost of

23  treatment in an amount to be determined by a probation officer.

24           You must participate, as instructed by the probation

25  officer, in a program of substance abuse treatment, outpatient

1    and/or inpatient, which may include testing for substance

2    abuse.  You must contribute to the cost of treatment in an

3    amount to be determined by the probation officer.

4           You must not use or possess alcohol or alcoholic

5    beverages.

6           And the Court will include a recommendation that the

7    defendant be placed in Arizona, or near Arizona, to accommodate

8    family visits.

9           Mr. Coyote, do you understand your sentence?

10          THE DEFENDANT:  Yes.

11          THE COURT:  The Court finds that this sentence is

12   sufficient, but not greater than necessary, to comply with the

13   purposes set forth in Title 18, United States Code, Section

14   3553(a), that it is a reasonable sentence under the statute,

15   given the nature and circumstances of the offense, the history

16   and characteristics of the defendant, the need to reflect the

17   seriousness of the offense and afford adequate deterrence.

18          The Court adopts the facts as set forth in the

19   presentence report in support of the guideline calculations and

20   the reasons for the sentence.

21          Counsel, have I sentenced defendant in accordance with

22   the terms of the plea agreement?

23          MS. REID-MOORE:  You have, Your Honor.

24          MR. BARTOLOMEI:  Yes, Your Honor.

25          THE COURT:  Sir, I find I have sentenced you in

1  accordance with the terms of your plea agreement, so that means

2  you've waived your right to appeal.

3          However, I do need to advise you that if you wish to

4  appeal, you have to do that within 14 days of today's date or

5  you lose that right.

6          If you wish to file an appeal and can't afford an

7  attorney, one would be provided to you at no cost.

8          And is there something to be dismissed?

9          MS. REID-MOORE:  There is, Your Honor.  At this time,

10  the government moves to dismiss the indictment in this case.

11          THE COURT:  On motion of the government, the

12  indictment will be dismissed.

13          MS. REID-MOORE:  Thank you.

14          THE COURT:  Is there anything else, counsel?

15          MS. REID-MOORE:  Nothing further.

16          MR. BARTOLOMEI:  Nothing further, Judge.

17          THE COURT:  Okay.  Thank you.  We're at recess.

18          MR. BARTOLOMEI:  Thank you.

19                          *          *          *

20

21

22

23

24

25

1                    C E R T I F I C A T E

2


3           I, CHRISTINE M. COALY, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7           I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 23rd day of

13   September, 2022.

14

15

16
                       /s/ Christine M. Coaly_____
17                     Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25